CHARLES A. BROWNING & others *vs.* WILLIAM H. CARSON.

Suffolk.   December 10, 1894. — March 2, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Husband and Wife — Married Woman doing Business on separate Account — Promissory Note — Action — Damages — Special Findings of Fact.*

The liability of a husband and of his wife, who is doing business on her separate account, for debts incurred by her in carrying on the business, if the certificate required by Pub. Sts. c. 147, § 11, has not been recorded, is several, and not joint.

If the promissory note of a married woman who is doing business on her separate account is taken, by the understanding of both parties, in payment of an existing account for goods sold her by the payee, and no fraud or deceit is practised upon the latter, he cannot, upon discovering that the certificate provided for by Pub. Sts. c. 147, § 11, has been recorded, rescind the transaction by returning the note, and maintain an action against the maker's husband upon the account; and it is immaterial that when the note was given the payee did not know that the certificate had been recorded.

If no demand is made on the maker of a promissory note at its maturity, and no notice of its non-payment is given to the indorser, the latter is not liable to an action thereon.

Although a married woman may not be liable upon a promissory note made by her and her husband, payable to the latter's order and indorsed by him, he is still liable as maker.

If A. and B., her husband, make a promissory note payable to and indorsed by him, and A. also makes another note, both of which are given to C. in payment of an account for goods sold by him to A., who is doing business on her separate account, and the first note is void as to her, but not as to B., and the settlement made by the second note is afterwards repudiated by C., who proves his whole account against the estate of A. in insolvency, the amount received from such estate must be regarded, in an action by C. against B. on the first note and on the account, as received *pro rata* in part payment of the note as well as of the account, and to this extent, if he is not liable on the account, the amount apparently due on the note should be reduced.

If special findings of fact by a judge, trying a case without a jury, appear to have been made upon evidence to which no exceptions were taken, although the ultimate finding of the amount due must be set aside and a new trial had on the question of damages, it is not necessary that the special findings should be set aside also.

CONTRACT, in three counts. The first count was against the defendant as maker, and the second count was against him as indorser, of a promissory note for $1,836.17, dated June 1, 1891, payable one month after date to his order, signed by M. B. C. Carson, who was the defendant's wife, and also signed and indorsed by the defendant. Payments were also indorsed on the notes amounting to $1,250. The third count was upon an account annexed for goods sold and delivered. Writ dated January 2, 1892.

Trial in the Superior Court, without a jury, before *Braley*, J., who allowed a bill of exceptions, in substance as follows.

There was evidence tending to show that Mary B. C. Carson, the wife of the defendant, had for some years prior to December 15, 1891, and for a time thereafter, carried on business in Brockton on her sole and separate account; that during this time she from time to time bought of the plaintiffs goods which were used by her in carrying on this business; that goods so bought were charged directly to her on the plaintiffs' books, and were sold on her sole and exclusive credit; that from time to time promissory notes were given by her to the plaintiffs for goods so sold; that on June 1, 1891, she owed the plaintiffs on her notes then overdue and on her account for merchandise the sum of $1,836.17; that on that day the note declared on was given; that on December 15, 1891, she owed the plaintiffs on open account for merchandise the sum of $835.64; that on that day, and never before that time, a certificate in due form that she was a married woman, and as such proposed to carry on business on her sole and separate account, was duly recorded in the city clerk's office in Brockton; and that on December 16, 1891, she gave to the plaintiffs her individual note for said sum of $835.64, and the plaintiffs receipted their itemized account of merchandise to that amount as follows: "Settled by note one month from December 16, 1891. C. A. Browning & Co." It also appeared that at the time of taking the note and receipting the account the plaintiffs did not know that such certificate was so recorded; that they first learned this fact one or two weeks afterwards, and after this action was begun; that on January 5, 1892, the plaintiffs sent Mrs. Carson a written notice that "we repudiate the said note as payment in any sense of your indebtedness to us," and that they had no intention of "releasing any

security we held therefor, or, by accepting said note, of losing or waiving or releasing any rights against your husband "; that the note was not then tendered to her, and no tender thereof was made to her until, at the time of the trial of this case, the note was tendered her in open court; that she at no time assented to such repudiation or cancellation, or accepted said tender, but refused to accept the same and contended that the note paid the open account; that on January 6, 1892, on her petition, she was adjudged an insolvent debtor, and made a composition offer of twenty-five cents on the dollar to her creditors; that the plaintiffs, in the insolvency proceedings, duly proved their account for merchandise sold to her, being the same account for which the notes of June 1, 1891, and December 16, 1891, had been given, as reduced by the payments made, as appears by the indorsements on the note, and on the account annexed and signed, agreeing to accept the offer in composition, and assenting to her discharge in insolvency upon payment of the amount thereof; that the composition offer was duly paid, and the plaintiffs received the sum of $365.29 as their part thereof, and she was duly discharged in insolvency; and that the defendant was during the whole time living with his wife and knew of these various transactions between her and the plaintiffs, and was present with her when she signed the note dated December 16, 1891, and gave it to the plaintiffs. There was no evidence tending to show that the note dated June 1, 1891, was ever protested for non-payment, or that any notice that it had not been paid was given to the defendant by the plaintiffs.

The defendant presented numerous requests for rulings not material to be stated.

The judge found that at the date of the writ the note declared on amounted to $627.23, and the account amounted to $835.64, making a total of $1,462.87; and that the payment to the plaintiffs of $365.29 left a balance of $1,097.58, which, with interest to the day of the finding, amounted to $1,170.38.

The judge also found the following facts. Mary B. C. Carson, during the year 1891, up to and including December 15, carried on business in Brockton, buying goods of the plaintiffs from time to time, the goods being used by her in carrying on said business. These goods were sold by the plaintiffs directly to her,

charged to her on their books, and sole and exclusive credit was
given to her. During this time the defendant was her husband,
lived with her, and knew about her business relation with the
plaintiffs. Neither she nor the defendant filed or recorded a
certificate that she was a married woman, and as such proposed
to do business on her sole and separate account, until December
15, 1891, when such certificate in due form was recorded in the
office of the city clerk of Brockton.

On June 1, 1891, she was indebted to the plaintiffs in the sum
of $519.05 on merchandise account, and $1,517.14 on notes that
were overdue. She paid $200 on the gross amount, leaving a
balance due to the plaintiffs of $1,836.17. She and the defend-
ant on that day gave the note declared on to the plaintiffs; and
the defendant indorsed the same in blank. The note was com-
plete as to signatures when delivered. On December 15, 1891,
she was indebted to the plaintiffs in the sum of $835.64 on mer-
chandise account, being goods sold to her on her own credit.
On December 16, 1891, the plaintiffs received from her a promis-
sory note dated that day for the same amount; this note was
signed by her alone. An itemized account for that amount was
receipted at the same time and given by the plaintiffs to the
defendant. The form of the receipt was: " Settled by note one
month from December 16, 1891. C. A. Browning & Co." At
the time of taking the last note and receipting the account, the
plaintiffs did not know that a certificate had been filed by her
on December 15, 1891.

On January 5, 1892, having found that such certificate had
been filed, and after consulting counsel, the plaintiffs notified
her that " we repudiate the said note as payment in any sense
of your indebtedness to us." This notice was in writing, and
stated, in substance, that the plaintiffs, at the time of taking the
note, did not know of the filing of the certificate, and that there
was " no intention of releasing any security we held therefor, or
by accepting said note of losing or waiving or releasing any
rights against your husband." The note, at the trial of this
case, was tendered to her in open court. She at no time ac-
cepted such cancellation or repudiation, and contended that the
open account was paid by the note.

On January 6, 1892, on her petition, she was adjudicated an

insolvent debtor, and thereafter made a composition with her creditors of twenty-five cents on the dollar. The plaintiffs did not prove either note against her estate, but received the sum of $365.29 on their claim; and she was duly discharged therefrom. This sum of $365.29 is all that the plaintiffs have received from her or from any source on account of her indebtedness to them since December 16, 1891.

It had been the practice of the parties during their business relations from time to time, on the one side to give notes for accrued indebtedness and on the other to take the notes, receipt the open account, and thereafter rely upon the note or notes. The transaction of December 16 did not differ from previous transactions between the parties, and the giving of the note and the receipting of the open account was payment by note of that account, and was at the time so understood and acted on by the plaintiffs and Mrs. Carson. The defendant was present at the time, and no fraud or deceit was practised by the defendant or his wife on the plaintiffs at the time to induce the plaintiffs to take the note and receipt the account. When the note declared on became due it was not protested, and no notice of the failure of Mrs. Carson to pay the same was given to the defendant.

The judge refused to rule as requested, and ruled that, under the first count of the declaration, the defendant was liable on the note as maker, and as between him and the plaintiffs it was a valid contract; and that, under Pub. Sts. c. 147, § 11, the liability of the defendant and his wife to the plaintiffs was several, and not joint, and the giving of the note by her to the plaintiffs, the same not having been paid, did not relieve the defendant from his statutory liability to pay the open account declared on in the third count of the declaration; and found and ordered judgment for the plaintiffs on the note and account in the sum of $1,170.38.

The defendant alleged exceptions.

*W. H. Carson, pro se,* did not care to be heard.

*C. T. Davis,* for the plaintiffs.

FIELD, C. J. But for Pub. Sts. c. 147, § 11, Mrs. Carson alone would have been liable to pay for the goods sold to her, as they were sold on her sole credit. See § 10. By the eleventh section the husband is made liable if the certificate required by

that section is not recorded "in the same manner and to the same extent as if such contracts had been made by himself." The wife is liable because she bought the goods on her separate account. The husband is liable because the statute makes him liable if a certificate is not recorded. *Feran* v. *Rudolphsen*, 106 Mass. 471. The liability is not joint, but several. *Ridley* v. *Knox*, 138 Mass. 83. The court trying the case without a jury has found that the note of Mrs. Carson given on December 16, 1891, was taken in payment of the account then existing, and was so understood by the plaintiffs and Mrs. Carson, and that no fraud or deceit was practised on the plaintiffs. The account having been paid by the note, neither the wife nor the husband is liable on the account, and the husband is not liable on the note because he is not a party to it. On the facts found, the plaintiffs could not rescind the transaction by returning the note. It is immaterial that when the note was given the plaintiffs did not know that the certificate had been recorded. It does not appear that the plaintiffs at that time knew anything about the statute on the subject. The statute requires the recording of a certificate to protect the husband from liability; if a certificate is not recorded, he is liable; if it is recorded, he is not liable on contracts made after the certificate has been recorded. The belief or knowledge on the part of the plaintiff that a certificate has or has not been recorded, or their knowledge of the statute, is in either case immaterial. The court should have ruled on the third count that, as the note given by the wife was taken by the plaintiffs in payment of the account, the plaintiffs could not recover against the defendant on that count.

The first and second counts are upon the note given on June 1, 1891, signed by both the husband and wife, and payable to the order of the husband and by him indorsed in blank to the plaintiffs. The facts found by the court, that no demand was made on the makers at the maturity of the note and no notice of non-payment given to the defendant as indorser, prevent the plaintiffs from recovering against the defendant on the second count, which is against him as indorser of the note.

The first count is against the defendant as maker of the note given June 1, 1891. Whether this note was given as absolute payment of the account and of the notes then unpaid, or as con-

ditional payment or as collateral security for the payment of this indebtedness, there was a valuable consideration for the note. We assume that the note was not valid against the wife, because it was payable to her husband's order, and was by him indorsed to the plaintiffs. *Roby* v. *Phelon*, 118 Mass. 541. Her contract as maker of the note being void, the husband is still liable as maker. When two persons execute a contract and one is not bound by reason of some disability, the other remains bound, especially when the facts which constitute the disability are known to the other. *Woodward* v. *Newhall*, 1 Pick. 500. *Tuttle* v. *Cooper*, 10 Pick. 281, 291. *Yale* v. *Wheelock*, 109 Mass. 502.

The court found that at the date of the writ there remained unpaid on the note declared on $627.23, and on the account declared on $835.64, making a total of $1,462.87; that deducting the amount received by the plaintiffs from Mrs. Carson's estate in insolvency, viz. $365.29, there was left a balance of $1,097.58, which with interest up to the day of the finding amounted to $1,170.38; and that this amount was due to the plaintiffs from the defendant. We understand that the plaintiffs proved against Mrs. Carson's estate in insolvency their whole account for which both notes were given. Whether a proof in this form ought to have been allowed is a question not before us. The amount received from her estate in insolvency must be regarded as received *pro rata* in part payment of the debt for which the note declared on was given as well as of the account declared on. To this extent the amount apparently due on the note should be reduced, and there should be a finding for the remainder, with interest from the date of the writ. On this bill of exceptions the only order we can make is that the exceptions be sustained; but this does not render it necessary that the special findings of fact by the court should be set aside, although the ultimate finding of the amount due must. be. The special findings of fact appear to have been made upon evidence to which no exceptions have been taken; and when the amount due on the note declared on in the first count is found, and the proper deduction made on account of the amount received from Mrs. Carson's estate in insolvency, the whole amount of the damages recoverable by the plaintiffs will appear. There must be a new trial on the first count on the question of damages.

*Exceptions sustained.*